UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARVELOUS SOLANO-RODRIGUEZ,
individually and on behalf of all others similarly
situated,

                                **Plaintiff,**

v.

AMAZON STUDIOS, INC.; AMAZON
CONTENT SERVICES LLC; PICROW, INC.;
PICROW STREAMING INC.; PICROW
FEATURES INC; JIGSAW PRODUCTIONS
INC.; and BIG INDIE PICTURES, INC.,

                              **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

**ECF Case**

**JURY TRIAL DEMANDED**

       Plaintiff, MARVELOUS SOLANO-RODRIGUEZ, on behalf of himself and all others similarly situated (collectively, "Plaintiffs"),by and through their attorneys, VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from the Defendants, AMAZON STUDIOS, INC., AMAZON CONTENT SERVICES LLC, (collectively "Amazon Defendants") PICROW, INC., PICROW STREAMING INC., PICROW FEATURES INC., JIGSAW PRODUCTIONS INC., and BIG INDIE PICTURES, INC., (collectively, "Defendants") and allege as follows:

## INTRODUCTION

      1.     This is a collective and class action brought under the United States Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.*, New York Labor Law §§650 *et seq.* (the New York Minimum Wage Act), and New York Labor Law §§195 *et seq.* (the New York Wage Theft Prevention Act against Defendants for their failure to pay minimum wages and overtime to Parking

Production Assistants ("PPAs") hired by Defendants to secure sets, lots, and streets throughout the New York metropolitan area (the "Production Sites"), in connection with Defendants' production of television shows, motion pictures, films, movies and other productions which utilize PPAs ("Productions").

2.      PPAs are required to keep the Production Sites clear of pedestrians and motorists by either placing cones or by parking company vehicles in order to block both foot and vehicle traffic. PPAs are also responsible for safeguarding production vehicles and equipment while they are on set.

3.      Plaintiff, along with similarly situated current and former employees of Defendants, are non-exempt employees who are paid a shift rate of pay and who do not receive minimum wage or proper overtime compensation for hours worked beyond forty (40) per workweek.

4.      Defendants' regular failure to pay Plaintiffs for all hours worked over forty (40) in a workweek violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* ("FLSA"), New York Labor Law §§650 *et seq*. (the "Minimum Wage Act"), the New York Wage Theft Prevention Act §195 ("WTPA") (together, the "NYLL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

5.      Defendants violate these laws by engaging in a systematic scheme of altering Plaintiffs' paychecks in order to deprive them of their statutorily required overtime pay.

6.      Plaintiff alleges, on behalf of themselves and similarly situated current and former employees who elect to opt into this action pursuant to the FLSA, that they are entitled to recover: (i) unpaid and incorrectly paid wages for hours worked above 40 in a workweek, as required by

law; (ii) unpaid overtime; (iii) liquidated damages; (iv) attorney fees and costs pursuant to the FLSA; and further relief as this Court finds necessary and proper.

7.     Plaintiff also bring this action, pursuant to the Fed. R. Civ. P. 23, on behalf of a class of all persons who are and were employed by Defendants in the New York metropolitan area as PPAs  (including comparable positions under any other nomenclature) during the past six (6) years through the final date of the disposition of this action who: (i) were not paid minimum wage for all hours worked or who were not properly paid overtime wages for hours worked above forty (40) in a workweek, as required by the NYLL; or, (ii) who were subjected to Defendants' willful failure to comply with the notice and record keeping requirements of NYLL§ 195(1) and § 195(3) resulting in penalties under NYLL § 198(1)b and 198(1)d; and who are entitled to recover: (1) back pay; (2) unpaid overtime; (3) liquidated damages; (4) statutory damages for notice and recordkeeping violations; (5) attorney's fees and costs; (6) interest; and such other further relief as this Court finds just and proper.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, 28 U.S.C. § 1337, which confers original jurisdiction upon this Court for actions arising under any Act of Congress regulating commerce, 28 U.S.C. § 2201, which confers original jurisdiction upon the filing of an appropriate pleading seeking to declare the rights and other legal relations of any interested party seeking such declaration, and 28 U.S.C. § 2202, conferring original jurisdiction concerning further necessary or proper relief based upon a declaratory judgment.

9.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State and District in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

11.     Plaintiff Marvelous Solano-Rodriguez ("Solano-Rodriguez") is a citizen of New York and resides in Bronx, New York.

12.     Upon information and belief, Defendant Amazon Studios, Inc. is located at 1601 Cloverfield Blvd, Suite 4000N, Santa Monica, California 90404 and transacted business in New York State by employing Plaintiff and all those similarly situated in the New York metropolitan area in connection with the Productions.

13.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Amazon Studios, Inc. exceeds $500,000.00, and thus subjects Defendant Amazon Studios, Inc. to the FLSA's overtime requirements. Additionally, Defendant Amazon Studios, Inc. is engaged in interstate commerce. This independently subjects Defendant Amazon Studios, Inc. to the overtime requirements of the FLSA.

14.     Upon information and belief, Defendant Amazon Content Services LLC, is located at 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501 and transacted business in

4

New York State by employing Plaintiff and those similarly situated in the New York metropolitan area in connection with the Productions.

15.    Upon information and belief, Defendant Picrow, Inc. is located at 736 Seward Street, Los Angeles, California 90038 and transacted business in New York State by employing Plaintiff and all those similarly situated in the New York metropolitan area in Productions that are in conjunction with Defendants Amazon.

16.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Picrow, Inc. exceeds $500,000.00, and thus subjects Defendant Picrow, Inc. to the FLSA's overtime requirements. Additionally, Defendant Picrow, Inc. is engaged in interstate commerce. This independently subjects Defendant Picrow, Inc. to the overtime requirements of the FLSA.

17.    Upon information and belief, Defendant Picrow Streaming Inc. is located at 736 Seward Street, Los Angeles, California 90038 and transacted business in New York State by employing Plaintiff and all those similarly situated in the New York metropolitan area in Productions that are in conjunction with Defendants Amazon.

18.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Picrow Streaming Inc. exceeds $500,000.00, and thus subjects Defendant Picrow Streaming Inc. to the FLSA's overtime requirements. Additionally, Defendant Picrow Streaming Inc. is engaged in interstate commerce. This independently subjects Defendant Picrow Streaming Inc. to the overtime requirements of the FLSA.

19.    Upon information and belief, Defendant Picrow Features Inc. is located at 736 Seward Street, Los Angeles, California 90038 and transacted business in New York State by

employing Plaintiff and all those similarly situated in the New York metropolitan area in Productions that are in conjunction with Defendants Amazon.

20.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Picrow Features Inc. to the FLSA's overtime requirements. Additionally, Defendant Picrow Features Inc. is engaged in interstate commerce. This independently subjects Defendant Picrow Features Inc. to the overtime requirements of the FLSA.

21.    Upon information and belief, Defendant Jigsaw Productions Inc. Features Inc. is located at 26 Broadway, Suite 1301, New York, New York 10004 and transacted business in New York State by employing Plaintiff and all those similarly situated in Productions that are in conjunction with Defendants Amazon.

22.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Jigsaw Productions Inc. exceeds $500,000.00, and thus subjects Defendant Jigsaw Productions Inc. to the FLSA's overtime requirements. Additionally, Defendant Jigsaw Productions Inc. is engaged in interstate commerce. This independently subjects Defendant Jigsaw Productions Inc. to the overtime requirements of the FLSA.

23.    Upon information and belief, Defendant Jigsaw Productions Inc. is located at 26 Broadway, Suite 1301, New York, New York 10004 and transacted business in New York State by employing Plaintiff and all those similarly situated in the New York metropolitan area in Productions that are in conjunction with the Defendants Amazon.

24.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Jigsaw Productions Inc. exceeds $500,000.00, and thus subjects Defendant Jigsaw Productions Inc. to the FLSA's overtime requirements. Additionally, Defendant Jigsaw

Productions Inc. is engaged in interstate commerce. This independently subjects Defendant Jigsaw Productions Inc. to the overtime requirements of the FLSA.

25.    Upon information and belief, Defendant Big Indie Pictures, Inc. is located at 26 Broadway, Suite 1301, New York, New York 10004 and transacted business in New York State by employing Plaintiff and all those similarly situated in the New York metropolitan area in Productions that are in conjunction with the Defendants Amazon.

26.    Upon information and belief, the amount of qualifying annual volume of business for Defendant Big Indie Pictures, Inc. exceeds $500,000.00, and thus subjects Defendant Big Indie Pictures, Inc. to the FLSA's overtime requirements. Additionally, Defendant Big Indie Pictures, Inc. is engaged in interstate commerce. This independently subjects Defendant Big Indie Pictures, Inc. to the overtime requirements of the FLSA.

27.    At all relevant times, Defendants jointly employed Plaintiff and those similarly situated, and together formed a "single integrated enterprise."

## FLSA COLLECTIVE ACTION ALLEGATIONS

28.    Plaintiff brings the first claim for relief pursuant to 29 U.S.C. §216(b) on behalf of himself and all similarly situated persons who elect to opt into this action and presently work for, or in the past have worked for, any or all of the Defendants, in the following collective:

> All PPAs (or other employees performing substantially the same job duties and responsibilities under other nomenclature), employed in the New York metropolitan area, who worked in excess of forty (40) hours in a given workweek during the FLSA statutory period ("FLSA Class" or "FLSA Plaintiffs") on the production of a television show, film, motion picture, movie, or other production utilizing PPAs, produced by Defendants or their affiliates.

29.    At all relevant times, Plaintiff is and has been similarly situated to all FLSA Class members because while employed by Defendants he performed similar tasks, was subject to the

same laws and regulations, was paid in the same or similar manner, was paid the same or similar rates, was required to work in excess of forty (40) hours per work-week, and was not paid the required one and a half (1 ½) times his respective regular rates of pay for time worked beyond forty (40) hours per week.

30.    Upon information and belief, Defendants treated all FLSA Class members similarly in requiring them to work in excess of forty (40) hours per workweek without adequate overtime compensation.  Plaintiff and FLSA Class members currently work or worked for Defendants at various Production Sites throughout the New York metropolitan area four (4) to six (6) days per week for an average of sixty (60) to one-hundred (100) hours per week, or more.  They were regularly and specifically scheduled to work more than forty (40) hours per workweek, yet Defendants did not pay them the statutorily required overtime compensation.  This practice was applied to all PPAs who worked on a motion picture, film or movie produced by one or more of the Defendants against all employees in a similar or identical fashion.

31.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate the FLSA Plaintiffs, and as such, notice should be sent to the FLSA Class members pursuant to 29 U.S.C. § 216(b).  There are numerous similarly situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join the action.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

32.    Defendants' conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damage to Plaintiff and the FLSA Class.  As exemplified by their doctored payroll records, Defendants are and have been aware of the requirement to pay Plaintiffs an

8

overtime rate for their hours in excess of forty (40) per workweek. However, Defendants have purposefully elected to force Plaintiffs to work off-the-clock hours by unilaterally reducing their reported hours of work each workweek and thus have knowingly and willfully failed to pay overtime.

## RULE 23 CLASS ALLEGATIONS

33.     Plaintiff additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL.

34.     The Class which Plaintiff seeks to define includes:

> All PPAs (or other employees performing substantially the same job duties and responsibilities under other nomenclature), employed in the New York metropolitan area, who worked in excess of forty (40) hours in a given workweek during the NYLL statutory period (the "New York Class") on the production of a television show, film, motion picture, movie, or other production utilizing PPAs, produced by Defendants or their affiliates.

35.     The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiff does not know the precise number of such persons, the facts upon which to base the calculation of that number are readily ascertainable since the identity, addresses, time records, work schedules, positions and rates of pay for each Class Member are determinable from Defendants' records.  Notice can be provided pursuant to Rule 23 of the Federal Rules of Civil Procedure.

36.     Upon information and belief, during the previous six (6) years, Defendants have, in total, employed well in excess of 500 PPAs in order to staff their Production Sites throughout the State of New York. This group of more than 500 PPAs is essentially an itinerant workforce that

performs work for all Defendants, when called upon to do so, in connection with the Productions according to Defendants' needs at any given time.

37.     There are questions of law and/or fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to the following:

a.    whether members of the New York Class were scheduled to work and/or required to work shifts of approximately twelve (12) hours, spanning four (4) to six (6) consecutive days per week;

b.  Whether members of the New York Class were paid at least the minimum wage for the hours worked in excess of forty (40) hours per week

c.  whether members of the New York Class were properly compensated for overtime pay pursuant to Defendants' policies;

d.  whether Defendants failed to properly pay members of the New York Class for the hours worked in excess of forty (40) hours per week;

e.  whether Defendants had a uniform policy and practice of paying a flat shift-rate of pay, including for overtime hours Defendants acknowledged Plaintiff and members of the New York Class worked;

f.  whether Defendants required members of the New York Class to work "off-the-clock" prior to and/or after their shifts;

g.  whether Defendants reduced members of the New York Class's actual hours worked each pay period in an effort to circumvent overtime pay requirements and whether such circumvention was willful;

h.  whether Defendants kept accurate records of hours worked by members of the New York Class;

i.  whether Defendants furnished members of the New York Class with false wage notices;

j.  whether Defendants furnished members of the New York Class with false wage statements; and,

k.  whether Defendants have any affirmative defenses for any of these claims.

38.     The claims of Plaintiff are typical of the claims of the members of the New York Class sought to be represented.  Plaintiff and the other New York Class members are or were employed by one or more of the Defendants and their affiliated entities and have been subjected to their policies, patterns or practices of failing to pay minimum wage, overtime or proper overtime wages for hours worked in excess of forty (40) hours per week, and have been furnished with false wage notices and false wage statements.

39.     Defendants employed Plaintiff in the same capacity as all members of the New York Class.  All members of the New York Class were treated the same or similarly with respect to pay or lack thereof.  Thus, there are common questions of law and fact which are applicable to each and every one of the members of the New York Class.

40.     This treatment included, but was not limited to, failure to pay employees the proper minimum and overtime wages, failure to reimburse expenses, and furnishing false wage notices and false wage statements.

41.     Plaintiff will fairly and adequately represent and protect the interests of the members of the New York Class.

42.     Plaintiff has kept records from their time working for Defendants and their affiliated entities and would properly and adequately represent the current and former employees who have been subjected to the treatment alleged herein.  Additionally, Plaintiff's attorneys have substantial experience in this field of law.

43.     A class action is superior to other available methods for the fair and efficient adjudication of the NYLL claims, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a company.  Class treatment of the New York Class claims is superior because it will obviate the need for duplicative litigation that may result in inconsistent judgments about Defendants' practices.  There are no facts pertaining to Plaintiff that are atypical from those of the New York Class.  Indeed, upon information and belief, Plaintiff was treated identically to other members of the New York Class.

## STATEMENT OF THE FACTS

*Facts Common to all Plaintiffs and Defendants*

44.     Defendants create, produce and/or distribute television, film, and other programming ("Productions"). The Productions are broadcast on Amazon's platform or in other mediums.

45.     In connection with the Productions, Defendants hire PPAs to work on various Production Sites in the New York metropolitan area.

46.     Generally, each Production Site operates pursuant to permit(s) granted by the New York City Office of Film, Theatre and Broadcasting ("OFTB Permits").  OFTB Permits provide access to public locations and street parking for essential production vehicles throughout the 300 square miles of public settings in New York City's five boroughs, including 27,000 acres of city

parks. OFTB Permits also permit special parking privileges at locations for vehicles essential to the shoot including equipment trucks, lifts, cranes, campers and satellite trucks.

47.     The street parking privileges granted by the OFTB Permits allow production vehicles to, *inter alia*: (1) park within five blocks of the permitted locations in areas designated with "No Standing except Trucks Loading & Unloading and Commercial Vehicles" signs; (2) to park at metered parking spaces without making payments to the meters; (3) to park in areas designated with "No Parking – Alternate Sides" signs; (4) to park in areas designated with "No Parking 8am-6pm" signs, and (5) park in other designated areas specified in the OFTB Permits.

48.     The PPAs secure the Production Sites during the course of the Productions. In order for the PPAs to properly secure the Production Sites, they are required to work round-the-clock surveillance without any breaks.

49.     As PPAs, Plaintiffs are required to work during all hours in which Defendants or their property are present on the Production Sites, including during inclement weather and when a set is shut down for any reason.

50.     In addition, Defendants do not provide Plaintiffs with transportation (or a means of). As a result, Defendants require that Plaintiffs utilize their own cars (or obtain cars) in order to perform necessary job duties or else forego the opportunity to work as PPAs on Defendants' Productions.

51.     Defendants require that upon commencement of employment, Plaintiffs provide motor vehicle information so that their cars are "registered" with each particular Production.

52.     Defendants do not reimburse Plaintiffs for the expenses that they incur in connection with their employment as PPAs.

53.     Defendants' failure to reimburse Plaintiffs for expenses incurred in connection with their employment is both purposeful and unlawful.

54.     Plaintiffs are forced to work in extreme weather, which requires them to run their vehicles 24 hours per day in order to have heat or air conditioning.

55.     Generally, at each Production Site, the Location Manager, a Parking Coordinator and an accountant for Defendants determine a flat rate of pay per shift that is applicable to all of the PPAs utilized at that Production Site.

56.     The Defendants have been responsible for scheduling the Plaintiffs for work and determining the number of shifts each Plaintiff worked in a given week.

57.     Defendants paid Plaintiffs and those similarly situated with a flat shift-rate of pay ranging from $130.00 to $165.00 for each twelve (12) hour shift.  This rate of pay varied based on the production on which Plaintiffs were working.  The most common shift rate was $150.00 per shift.  However, Plaintiffs were frequently assigned shifts of fewer than twelve (12) hours.

58.     Plaintiffs' paychecks did not reflect their actual rates of pay.  Instead, when working a twelve (12) hour shift, their paychecks would indicate that they worked eight (8) hours at one fictional rate and an additional four (4) hours at another fictional rate. These fictional rates were "backed into" by Defendants' accountants (down to the fourth decimal place) so that the hours reported on Plaintiffs' paychecks came out to exactly equal to the shift rates described above.

59.     Plaintiffs were required by Defendants to work at least four (4) hours in order to be paid for a six (6) hour "half-shift" rate of pay. Similarly, Plaintiffs were required to work at least eight (8) hours in order to be paid for a twelve (12) hour "full shift" rate of pay.  If Plaintiffs failed to meet the abovementioned thresholds, they were not compensated by Defendants for hours worked below these threshold levels.

60.    For example, if Plaintiffs worked less than four (4) hours they would not be compensated at all. If Plaintiffs worked between six (6) and eight (8) hours, they would only be compensated for six (6) hours. Similarly, if Plaintiffs worked fifteen (15) hours they would only be compensated for twelve (12) hours.

61.    Plaintiffs never had any influence or say over their rate of pay per shift.

62.    Defendants provide a payroll company with all the necessary hiring and employment records for the PPAs including, but not limited to: W2 employment forms, W4 Employment Forms, Pay Rate Acknowledgment Forms, Wage Verification Forms (purporting to provide the information required under the New York WTPA), Conflict of Interest Questionnaires, Direct Deposit Forms and Employment Verification Forms.

63.    During the execution of these documents, Defendants required Plaintiffs to leave the wage information blank on the Wage Verification Forms and Defendants later fill in the information required by the New York WTPA with the rates necessary to complete their scheme of depriving Plaintiffs of their minimum wage and overtime pay.

64.    One method utilized by Parking Coordinators to schedule PPA's for any given production is to contact the PPA's via cell phone either by text or message to convey their schedule and the Production Site they are to report to.

65.    At the end of each pay period the Parking Coordinator for each Production Site compiles data for each PPA's total time worked and submits employee "Time Sheets" to the accountant responsible for each Production Site.

66.    The Time Sheets submitted by the Parking Coordinators to the accountants responsible for the Production Sites purport to bear the signatures of the PPAs. However, it is

routine practice for the Parking Coordinator to sign the PPA's name instead of obtaining the individual PPA's signature, without obtaining the approval of the PPA.

67.    Based upon the Time Sheets purportedly signed by the PPAs, Defendants would then provide the final pay information for each PPA to a payroll company that issued paychecks to the Plaintiffs on a weekly basis.

68.    These paychecks did not accurately reflect the agreed upon rates of pay or the number of hours actually worked by each Plaintiff per workweek.

*Amazon Defendants*

69.    During all relevant times, Amazon Defendants have produced and distributed television shows, motion pictures, films, and movies, at their own behest and in conjunction with the other Defendants. Amazon's content is distributed through, among other things, Amazon Video, Amazon's digital video streaming service.

70.    Amazon Defendants, in conjunction with the other Defendants, have employed PPAs subjected to the unlawful pay practices described above.

71.    Plaintiff is similarly situated to the FLSA Class and New York Class members hired in connection with the production of the Amazon Productions.

*Defendant Picrow, Inc.*

72.    Throughout the relevant times, Defendant Picrow, Inc., in conjunction with Amazon Defendants, has produced television shows.

73.    Defendants Picrow, Inc., in conjunction with Amazon Defendants, have employed PPAs subjected to the unlawful pay practices described above.

16

74.     Plaintiff is similarly situated to the FLSA Class and New York Class members hired in connection with the production of Defendant Picrow, Inc. and Amazon Defendants' Productions.

### Defendant Picrow Streaming Inc.

75.     Throughout the relevant times, Defendant Picrow Streaming Inc., in conjunction with Amazon Defendants, has produced motion pictures, films, and movies.

76.     Defendants Picrow Streaming Inc., in conjunction with Amazon Defendants, have employed PPAs subjected to the unlawful pay practices described above.

77.     Plaintiffs is similarly situated to the FLSA Class and New York Class members hired in connection with the production of Defendant Picrow Streaming Inc. and Amazon Defendants' Productions.

### Defendant Picrow Features Inc

78.     Throughout the relevant times, Defendant Picrow Features Inc, in conjunction with Amazon Defendants, has produced motion pictures, films, and movies.

79.     Defendants Picrow Features Inc., in conjunction with Amazon Defendants, have employed PPAs subjected to the unlawful pay practices described above.

80.     Plaintiff is similarly situated to the FLSA Class and New York Class members hired in connection with the production of Defendant Picrow Features Inc. and Amazon Defendants' Productions.

### Defendant Jigsaw Productions Inc.

81.     Throughout the relevant times, Defendant Jigsaw Productions Inc., in conjunction with Amazon Defendants, has produced television shows.

82.     Defendants Jigsaw Productions Inc., in conjunction with Amazon Defendants, have employed PPAs subjected to the unlawful pay practices described above.

83.     Plaintiff is similarly situated to the FLSA Class and New York Class members hired in connection with the production of Defendant Jigsaw Productions Inc. and Amazon Defendants' Productions.

### Defendant Big Indie Pictures, Inc.

84.     Throughout the relevant times, Defendant Big Indie Pictures, Inc., in conjunction with Amazon Defendants, has produced motion pictures, films, and movies.

85.     Defendants Big Indie Pictures, Inc., in conjunction with Amazon Defendants, have employed PPAs subjected to the unlawful pay practices described above.

86.     Plaintiff is similarly situated to the FLSA Class and New York Class members hired in connection with the production of Defendant Big Indie Pictures, Inc. and Amazon Defendants' Productions.

### Marvelous Solano-Rodriguez

87.     Beginning in or around 2013, Solano-Rodriguez began his employment as a PPA for the Defendants.

88.     As a PPA, Solano-Rodriguez was responsible for keeping Production Sites clear of pedestrians and motorists and for safeguarding production equipment while on set.

89.     At the start of the a production(s), Solano-Rodriguez was required by Defendants to fill out and sign blank Wage Verification Forms or else forego the opportunity to work on the production. Defendants would later on fill in the respective forms with information concerning Solano-Rodriguez's purported wages and hours worked.

90.    At the end of each pay period, Solano-Rodriguez's Parking Coordinator would fill out Solano-Rodriguez's Time Sheet and sign his name for submission to the Defendants' accountant(s) without obtaining Solano-Rodriguez's approval. Solano-Rodriguez never had any say with respect to the hours submitted.

91.    Solano-Rodriguez was typically paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week, consisting of approximately five (5) to nine (9) shifts.  However, Solano-Rodriguez was also assigned shifts of fewer than twelve (12) hours.

92.    Solano-Rodriguez was required by Defendants to work at least four (4) hours in order to be paid for a six (6) hour "half-shift" rate of pay. Similarly, Solano-Rodriguez was required to work at least eight (8) hours in order to be paid for a twelve (12) hour "full shift" rate of pay.  If Solano-Rodriguez failed to meet the abovementioned thresholds, he was not compensated by Defendants for hours worked below these threshold levels.

93.    Solano-Rodriguez was paid weekly by check, but the check did not accurately reflect his hourly rate of pay, overtime rate of pay, or actual hours worked.

94.    Solano-Rodriguez's paychecks did not reflect his actual rate of pay.  Instead, when Solano-Rodriguez worked a twelve (12) hour shift, his paycheck would report that he worked eight (8) hours at one fictional rate and an additional four (4) hours at another fictional rate, where these fictional rates were "backed into" by Defendants' accountants (down to the fourth decimal place) so that the hours reported on Solano-Rodriguez's paychecks came out to exactly equal the $150 shift rate described above supporting the fact that he and other similarly situated PPAs were in fact paid a shift rate.

19

95.     Solano-Rodriguez was not compensated for all hours worked and as a result was denied the mandated minimum wage rate for certain hours worked.

96.     Solano-Rodriguez was also required to work in excess of forty (40) hours per week without receiving proper overtime compensation.

97.     Defendants' methodology of "backing out" the hours worked on Solano-Rodriguez's paycheck was done in order to meet pre-fixed weekly figures based wholly off of the number of shifts he worked per pay period.

98.     As a result, Solano-Rodriguez's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

99.     During the course of his employment by Defendants, Solano-Rodriguez did not receive the wage notice required under NYLL.

100.    Solano-Rodriguez did not receive accurate wage statements as required by NYLL. Instead, as set forth herein, Defendants routinely falsified Solano-Rodriguez's wage statement.

*The Violations*

101.    Although Defendants never provided Plaintiff and those similarly situated with the wage notice disclosures required by NYLL, Defendants informed Plaintiffs that they were to be paid on a flat shift-rate basis, Defendants never correctly compensated Plaintiffs by paying their statutorily required overtime pay. Rather, Defendants unilaterally reduced the number of reported hours worked by Plaintiffs and calculated a fictitious, hourly overtime rate which ultimately resulted in Plaintiffs receiving only the flat shift rate.

102.    As such, the reported hours worked on each of the paychecks were consistently less than what Plaintiffs actually worked during that pay period. Moreover, because the paychecks provided by Defendants to Plaintiff (and those similarly situated) reported that they worked fewer

hours than the hours actually worked, the wage statements provided to Plaintiff and those similarly situated were false.

103.   Upon information and belief, Defendants have obtained the assistance of accountants and/or employees to calculate the precise number of purported regular, overtime and double time hours reported on Plaintiffs' checks so that Plaintiffs' stated weekly gross earnings correspond to pre-determined totals budgeted and accounted for by Defendants.

104.   Defendants' methodology of "backing out" the hours to meet pre-determined weekly figures is unlawful, as it directly resulted in the Plaintiffs being improperly paid for their total hours worked.

105.   In order to hide the fact that Plaintiffs have been paid less than what is statutorily required, Defendants falsely and incorrectly stated the numbers of hours worked in payroll records and on Plaintiffs' paychecks.  Defendants did not take into account the fact that Plaintiffs' shifts were twelve (12) hours in length when computing their hours worked per week.  This was all done by Defendants as part of an effort to withhold from Plaintiffs their lawful compensation.

106.   In effect, Defendants have been continuously "shaving off" hours that Plaintiffs worked each week, forcing the Plaintiffs to work "off-the-clock."

107.   As a result, Plaintiffs have not been paid for their actual total hours worked throughout the workweek.

108.   Upon information and belief, Plaintiff and those similarly situated have been treated uniformly throughout their employment with Defendants at their various Production Sites.

109.   At all relevant times, Defendants controlled all terms and conditions of Plaintiffs' employment, including but not limited to their hours and rates of pay.

110.    All Defendants have been aware of their payroll practice and were consciously disregarding the requirements of the FLSA and NYLL.

111.    All Defendants have been knowingly and willfully paying Plaintiff and other similarly situated PPAs a shift-rate for hours worked over forty (40) rather than an hourly rate, which deprived them of statutorily mandated overtime.

112.    All Defendants have been knowingly and willfully depriving Plaintiff and other similarly situated PPAs of the statutorily mandated minimum wage as illustrated in Paragraphs 56-57 above.

113.    This falsification of payroll records further evidences Defendants' knowing and willful violation of the law.

## CAUSES OF ACTION

### AS AGAINST ALL DEFENDANTS BY PLAINTIFFS

**First Cause of Action**
**for Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.**

114.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

115.    Defendants employed the FLSA Plaintiffs, and employed or continue to employ, each member of the FLSA Plaintiff collective within the meaning of the FLSA.

116.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in the Complaint.

117.    The Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

118.    The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to Defendants.

119.    Defendants have a policy and practice of paying a shift rate of pay in lieu of an hourly rate and overtime.   Said shift pay did not accurately reflect overtime pay due to FLSA Plaintiffs.

120.    As a result of Defendants' willful failure to compensate FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated, and continues to violate, the FLSA.

121.    As a result of Defendants' willful failure to record, credit and/or compensate FLSA Plaintiffs, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

122.    As a result of Defendants' FLSA violations, FLSA Plaintiffs are entitled to recover from Defendants: (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

123.    Because Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.

### Second Cause of Action
### for Violation of the New York Labor Law §§ 650 *et seq*.

124.    Plaintiff on behalf of himself and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

125.    Defendants employed Plaintiff, and employed or continue to employ, each of the members of the New York Class within the meaning of the NYLL.

126.     Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

127.     The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

128.     Defendants have failed to pay Plaintiff and the New York Class the minimum and overtime wages to which they are entitled under the NYLL.

129.     By virtue of Defendants' failure to pay Plaintiff and the New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, Defendants have willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1 and 12 N.Y.C.R.R. 142-2.2.

130.     As a result of Defendants' willful violations of the NYLL as relates to the Plaintiff, he and the New York Class are entitled to recover from Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

131.     Defendants' NYLL violations have caused the Plaintiff and the New York Class irreparable harm for which there is no adequate remedy at law.

**Third Cause of Action
for Violation of the New York Labor Law § 195
(Notice Requirement)**

132.     Plaintiff, on behalf of himself and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

133.    NYLL §195(1)(a) requires that Defendants provide each employee, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February 1st of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

134.    NYLL §195(1)(a) further requires that each time Defendants provide such notice to each employee, Defendants must obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to §195(1)(a) was in the language so identified or otherwise complied with paragraph (c) of subdivision §195(1)(c), and shall conform to any additional requirements established by the Commissioner of the New York Department of Labor with regard to content and form.

135.    Additionally, pursuant to §195(1)(a), for all employees who are not exempt from overtime compensation as established in the Commissioner's minimum wage orders or otherwise

provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay.

136.    Defendants did not provide Plaintiff or the New York Class with accurate or truthful requisite notices described above in the foregoing paragraphs.

137.    Defendants did not state the regularly hour rate and overtime rate of pay Plaintiff and the New York Class were to be paid.

138.    As a result of Defendants' failure to comply with the notice requirements of NYLL §195 (including subsections (3) and (4) thereof), Plaintiff and members of the New York Class are entitled to recover from Defendants penalties as provided by NYLL §198(1)(b) and §198(1)(d).

**Fourth Cause of Action**
**for Violation of the New York Labor Law § 195**
**(Record-keeping Requirements)**

139.    Plaintiff, on behalf of himself and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

140.    NYLL §195(3) requires that Defendants furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

141.    NYLL §195(4) requires, among other things, that Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

142.    NYLL §661 requires that Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

143.    12 N.Y.C.R.R. §142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

144.    N.Y.C.R.R. §142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

145.    Defendants did not provide Plaintiff or the New York Class with accurate or truthful requisite statements described above in the foregoing paragraphs.  Instead, as set forth herein, Defendants falsified wage statements provided to Plaintiff and the New York Class.

146.    As a result of Defendants' failure to comply with the record keeping requirements of NYLL §195 (including subsections (3) and (4) thereof, Plaintiff and members of the New York Class are entitled to recover from Defendants penalties as provided by NYLL.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all members of the FLSA Class and the New York Class employed by Defendants, demands judgment against Defendants as follows:

147.    At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the FLSA collective as defined herein.  Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

148.    Designation of Plaintiff as representative of the FLSA Class and New York Class, and Plaintiff's counsel as class counsel;

27

149.    Equitable tolling of the FLSA statute of limitations as a result of the Defendants' failure to post requisite notices under the FLSA;

150.    Certification of this action as a class action pursuant to Rule 23 of the Civil Rules of Civil Procedure for purposes of the claims brought on behalf of all New York Class members under the NYLL and the New York Department of Labor Regulations promulgated thereunder;

151.    Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for Defendants' failure to comply with the notice and record-keeping requirements of NYLL §§ 195 (including subsections (3) and (4) thereof), for failure to provide required wage notices and for falsification of wage statements;

152.    Demand a jury trial on these issues to determine liability and damages;

153.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

154.    A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, New York Labor Law, §§ 650 *et seq*. and the New York Wage Theft Prevention Act, § 195 *et seq*. of the New York Labor Law, as amended;

155.    All damages which Plaintiff and all FLSA and New York Class members have sustained as a result of Defendants' conduct, including back pay, liquidated damages, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

156.    An award to the Plaintiff and all FLSA and New York Class members of pre-judgment interest at the highest applicable rate, from and after the date of service of the initial complaint in this action, on all unpaid wages from the date such wages were earned and due;

157.    An award to the Plaintiff and all FLSA and New York Class members representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

158.    An award to the Plaintiff and all FLSA and New York Class members for the amount of unpaid wages, including interest thereon, and penalties subject to proof;

159.    An award to Plaintiff and all FLSA and New York Class members for all unreimbursed expenses;

160.    Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

161.    Pre-judgment and post-judgment interest, as provided by law; and

162.    Granting Plaintiff and all FLSA and New York Class members' other and further relief as this Court finds necessary and proper.


Dated: March 2, 2017
     Garden City, New York

                    Respectfully Submitted,

                    VALLI KANE & VAGNINI LLP
                    600 Old Country Road, Suite 519
                    Garden City, New York 11530
                    516-203-7180

                    James Vagnini (JV-2163)
                    Robert J. Valli, Jr. (RV-9995)
                    Matthew Berman (MB-0707)